Thank you, Your Honor. Ben Coleman for Appellant Kenneth Rufus Crowe. I'll watch the clock and try to save a minute or two. The government has apparently conceded that the position it took below and the district court's analysis were wrong. It now agrees, it appears, that the only way that Mr. Crowe's trial could have been terminated is if he either consented or there was a manifest necessity for the mistrial or a mistrial. The government is asking this court to make one of those two findings in the first instance. We believe that the government doesn't even get out of the starting blocks, that they've waived both of those contentions. Under this court's decision in bonus, this court has made clear that the time for the government to advise the court as to what to do in this type of situation is in the district court. When they bypass that opportunity to correctly inform the district court as to what needs to be done, they forfeit the right to retry the defendant. The normal rule is that the party trying to defend what the district court did can do so on appeal on any ground that appears in the record. If we thought that the record supported the district court's decision, even if the government didn't make that argument below, why can't they make it now? I think the normal rule is that you can affirm on any ground properly raised below. We cited the Supreme Court's recitation of the rule. A lot of times that last phrase gets left off when courts are saying quickly, we can affirm on any ground, but it's really affirm on any ground properly raised below. The government didn't properly raise either of these claims below. That would be our first argument. Our second argument is that even if somehow the rule is broader and allows you to affirm on any ground, generally allows the court to affirm on any ground, even if it is not properly raised below, that when you're looking at the very valued constitutional right, double jeopardy right, this court has made it clear because it's such a valued right that that type of analysis doesn't apply in this particular context. By that, you're referring to the bonus case? Correct. The interesting thing about that case is it says, literally the first sentence in that decision is, we consider whether the record supports the district court's finding of manifest necessity. And then later on, it says the record contains no evidence. And the reason it didn't is because if I remember right in that case, the government basically said, hey, use the magic words. I don't think they used the magic words, magic words. But they said use the magic words, manifest necessity, and we're all good. And basically the court was saying you can't do that. But as I understand it, the government is making a different argument here. I don't think they're arguing that they argued for manifest necessity below. But I think they're saying manifest necessity is met. The record in this case, you don't have to go reopen the record or anything. That is different than bonus because bonus, there was literally nothing in the record that would support manifest necessity. The government's position, at least, is that this record does support that. So why is that not make bonus not really on point? Well, I think it's on point in the sense that this court could have remanded for further evidentiary hearing, and it didn't. It just said, look, you forfeit the right. But I'm not saying that we would remand in this case for further evidentiary hearing. I'm saying that I think the government's position is let's say that there was a hard and fast, that bonus stands for the fact that you can't make a new record now. Whether we remanded it or whether we just looked at the record ourself, as I understand it, the government's position is on this record you can decide manifest necessity. And that wasn't true in bonus. So why does bonus control that issue? Well, there is a distinction there, and I take that point. I think the situation is actually worse in this case because I think the government, and I want to get to the merits of manifest necessity, so I don't want to get hung up here. But the government actually, at least in bonus, the government told the district court you need to find manifest necessity. Here the government took, they affirmatively waived the manifest necessity issue. They told the government, the court, no, you don't have to find manifest necessity. I'm a little confused. I thought we were talking about consent, and now we're talking about manifest necessity. Do you have the same position with regard to consent and manifest necessity? Yes. With regard to the government's position and also with regard to the fact that we as a court cannot look at the record now or should not look at the record now. Yes. I have the same position as to both. But I do want to talk about the merits as well. And if we start with manifest necessity first, I mean, you know, as we've said in the briefs, that the proof is in the pudding. Defense counsel, who frankly I think is making the right points in this whole colloquy, we have a very serious situation where there's a note indicating that several of the jurors have already spoken. They don't like Mr. Lujan, who's the defense counsel. They've already made up their minds to convict. And he's asking for more investigation. Let's take a deep breath. Let's take a little bit of time and figure out what is the proper thing to do. And he's asking for a one-day continuance. And that's shut down. And then an hour or so later after he's severed, the parties come back. And with the government's consent, they grant the very one-day continuance that he was requested. How can that be manifest necessity in this type of situation? And then the next day they grant it for an additional month continuance. So to say that there was a manifest necessity when counsel is simply asking for a bit of time to research and investigate the issue as to what is the way to proceed in this unusual, although it does happen from time to time, but in this type of situation, there's just simply no manifest necessity. So even if the court felt that Bonas was distinguishable and that you could take a look at this and make a finding in the first instance, there just simply is no manifest necessity. What about consent? As far as consent. It seems that he essentially said there should be a mistrial for the whole case. Right. In the language, and I have it kicked up here, but what he says is he's saying, look, it would be foolish to sever Mr. Crow. We shouldn't do that. And then he says, and if you're pressuring us to do this and we have to go to trial right now, then I think the government is not complying with their ethical obligations. They're not looking to see that justice is done and that there should be a mistrial for the entire case. And then she says, what did you say? And he says, not. And then he says, for the entire case. And she says, a mistrial? And he says, yes, no. And then she says, well, look, his consent doesn't matter. I'm not doing a mistrial. It doesn't matter whether or not he's consenting. She firmly says, I don't care about consent. I'm just severing him. And then in the following pages of transcript, he repeatedly says, we don't consent to the severance. I've spoken with Mr. Crow. He does not consent to the severance. To make a finding in the first instance of consent, which is obviously not a pure legal issue, it's a mixed question of law and fact. Why, I mean, just on that point, why isn't it a pure legal issue? I mean, there's no dispute. The transcript is an accurate reflection of what everybody said. So isn't the question just do the words that were said amount to consent as a matter of law? Well, I think that what was said clearly shows no consent. But, I mean, look at this transcript. Does this clearly show he's saying a mistrial for the entire case? And then— Well, but, I mean, you may be right as a matter of law. My question is just isn't it a legal question rather than a factual one? Well, what this court has said is that consent in a double jeopardy context, the trial court is in the best position to make that evaluation because the trial court is, especially in a dialogue like this, can get a flavor of what is actually being said. The defendant is standing in front of the court. This court has said that the trial court is in the best position to do that, and I assume they're in the best position to do that because there's factual issues that are wrapped up that make it, you know, a mixed question of law and fact that maybe leans a little bit more towards fact, but it involves both. But I think on this record this court can clearly find that there was no consent given everything that was done. And especially when you're being asked to do it in the first instance, and if you want to overlook the government's waivers, certainly the record would have to clearly manifest consent, both when you're looking at this in the first instance and when you're talking about the waiver of such a valued constitutional right, such as double jeopardy, which the courts have said you have to show clear consent in that context. So they almost have like a double clearness hurdle that they have to overcome, and they just certainly can't do it on this record. And so for all those reasons, even if the court doesn't hold the government to their clear waivers, the record shows that there was neither manifest necessity nor consent, and we'd ask the court to reverse with instructions to dismiss. Thank you. I'll save the remaining time. You may. Mr. Valentini. Good morning. May it please the Court. Francesco Valentini for the United States. A trial Mr. Crow's attorney purported to present the district court with an ultimatum. Either grant a continuance based on an ethical issue that the district court, the government, the other defendants did not find substantial, or, to quote the attorney in the case, I'm not going to proceed and I'm going to resign, leaving Mr. Crow without legal representation in the middle of a felony trial. Nothing in the double jeopardy jurisprudence requires the district court to cave to that ultimatum. Now, of course, as in any mistrial case, in this case double jeopardy protected but was limited to the defendant's precisely defined right to have the verdict rendered by the first in panel jury. But the Supreme Court and this court have both made clear that that right is not absolute and that it must yield to the public's interest in fair trials and in the fair administration of justice. And so, first, that right disappears entirely when the defendant consents to the termination of his first trial. So, I mean, this is a very odd case in that normally we're reviewing some finding by the district court, either of consent or manifest necessity. And here, you know, we don't have those findings, certainly not in terms, and we don't seem to have them even implicitly because the district court and the government were both operating under the assumption that this didn't implicate double jeopardy at all and the manifest necessity didn't need to be found. So, how are we to review that? I mean, it seems like what you are asking us to do is to reconstruct the findings that the district court should have made. Is that right? Not quite. And I would push back a little bit on both characterization of this case as unique as well as the absence of findings. With respect to the uniqueness of the case, this situation arises with some regularity. It certainly arose, for instance, in Arizona. What is the situation exactly? I mean, the situation here is that the government and the district court, as I understand it, specifically disavowed the need to find manifest necessity because they said it was a severance and it wasn't covered by that requirement. Is that the situation that you're talking about, that that occurs? I've never seen it before. Not the precise set of events. What I'm referring to is the fact that there is no explicit finding of manifest necessity. But there's more than no explicit finding. There's a declaration that that's not the standard I'm applying. I'm applying a different standard. That is true, and that is a difference. That is a distinction with some of the cases like Arizona v. Washington or this court's decision in the United States v. Chapman. But what we do have in this case are the practical findings of prejudice and that those findings of prejudice, including to the defendant's own right to be represented for the remainder of the proceeding, quote, necessitated the severance in this case. So while it is possible that it is true that the district court appeared— But substantively, isn't the standard for whether to have a severance, aside from the fact that it didn't apply here, a considerably weaker standard of, quote, necessity than the double jeopardy manifest necessity standard? In other words, right, so even that standard finding with regard to severance is not a manifest necessity for double jeopardy purposes. No, that is correct. There is no express finding, so the finding with respect to severance does not necessarily equate a finding with respect to manifest necessity. But the type of finding that was made with respect to severance implicitly implies a finding that also suffices under manifest necessity, and the facts amply underscore there. This is a situation in which— But how could there be a manifest necessity not to have a one-day continuance when, in fact, it turns out there was a one-day continuance, and then there was a several-week continuance? As to the continuance, I would like to take this—and I think the timing sequence is critical to understand in this case. First, there is a question of the continuance, and then there is a question of the mistrial and the manifest necessity. With respect to the latter, once defense counsel had walked off the case and said they would not continue with the case, the existence of manifest necessity is really, I hope, beyond dispute. The defendant, that defendant, could not continue with the trial. Now, with respect—and that is really the core of the basis of the court's decision. It's reflected in the court's order, and that is what led the court to ultimately sever the case. So, therefore, the alternative of having the continuance is off the table, when that was a contingent declaration that the lawyer was going to resign, if you don't grant the continuance. So there was an alternative, grant the continuance. That's correct. And the two points I would like to make with respect to that, the continuance was well-founded. At that point, the trial was in the third week. The first witness was still on the stand. There had been multiple delays. There had been plenty of indications that a lot of the delays were caused for whatever reason by the conduct of Mr. Crow's counsel. There had been a delay caused by a meritless motion to disqualify the government. There had been delays related to assertions of illness, and the court is in the best position to control its courtroom and made a determination that this case could not proceed, and there would be more and more delay, and that the delay was having a substantial effect. Well, all the other delay was pre-impediment of the jury, right? No, I don't believe all of the previous delays were. I think one of the second illness was after the jury was in panel, if I'm correct about that. But I would have to check the record with respect to that. But the court, the district judge was in the courtroom and had the full understanding of what was happening in that courtroom, that there would be continuous delays, and that the other defendants' rights, as well as rights of the public and the interests of the government would be prejudiced. Now, in addition to that, I would like to make the point that there is a serious destabilizing effect to a ruling in the favor of the defendants, in this case, based on a hindsight review of whether continuance would have been actually warranted on this fact. It cannot be that a continuance that is not otherwise warranted becomes warranted because defense counsel says, well, if I don't get my continuance, then I'm just going to walk off this case. That would create an incentive and carte blanche, frankly, for a recalcitrant defendant or defense counsel to weaponize. Well, I mean, it would create an incentive for the district court and the government to explain that that's the reason that the continuance is being denied. And rather than leaving it to us to sort of reconstruct that that would have been a good reason. But I would push back with the idea that the explanation for the denial of the continuance in this case was lacking or was on the merits insufficient. Again, the district court explained not only the delay that preceded how the case got to this point, which is very important given the sort of uber deference that is owed to district courts and the management of their own courtroom, but also with respect to the continuance that was being requested. The court evidently had no confidence that one or two-day continuance would actually resolve the issue that defense counsel had identified for himself. The district court essentially said on the transcript, and it's clear on the face of the transcript, if this is in fact something that defense counsel wants to find an attorney for, this probably could take one or two weeks. So the district court, who was very familiar with this case... was applying the manifest necessity standard when there was no application of that standard. But if there had been, the case law seems to suggest that the consideration of alternatives is important. An obvious alternative is, well, okay, I'll give you two days, but no more than that. And if you don't get this taken care of in two days, we're going forward with the trial. The two points I would make. First, the district court was in the best position to determine whether... Yes, if it had been applying the right standard, but the problem is it wasn't. So in terms of... and that's why it seems important that the severance standard and the manifest necessity standard are not the same as to what he was considering as to whether there were alternatives and whether she needed to consider the alternatives. Two points, and I want to get back to your point, Your Honor, in a second. But the first point I will make is that the court did consider the alternatives. And the case law, the instances in which a manifest necessity finding or implicit finding was found lacking or insufficient are not instances in which a district court considered a continuance, but found it unnecessary. Those are all cases in which a district court did not give any consideration to the continuance. In other words, there is no precedent, to our knowledge, where a court of appeals essentially overruled a determination as to the propriety of a continuance under the rubric of manifest necessity when that determination was squarely taken into account by the court as it was in this case. And the reason is, in general, straightforward. Because that would open up a great incentive, sure, for the government to be clear, for district courts to be clear, but also to weaponize, if you will, this request for continuances into potential death or jeopardy claims. Why is that weaponizing? Explain to me what you mean. Well, I think the evidence is, and I see that my time is about to run, but I wanted to make this point. The evidence is, the proof of that is before us right now. We are on an interlocutory appeal under ABNY, which is as narrow an interlocutory appeal as it comes, and we're not debating whether a continuance was properly granted. No, no, no, we're not. Unless I'm misunderstanding, we're not debating the propriety of the continuance or not. If the district court had said, you're not getting the continuance, and then Mr. Lujan said, fine, I'm withdrawing, and then the district court said, well, now we have a defendant without counsel. I have to declare a mistrial. That would be a different situation, but none of that happened. We just had the district court announcing that it was severing without understanding or grappling with the double jeopardy implications of it, so isn't that an important difference? With respect, all of the sequence of events that Your Honor described did happen, except for the court, of course, not mentioning manifest necessity instead of seemingly applying a different standard. If this court, and I see that my time is up, I welcome any further questions, but if the court is concerned about the absence of an express fine in this case, the proper process would be to remand this case for determination, as Judge Van Dyck suggested, on this factual record as to whether manifest necessity exists. What authority is there for that proposition? In your brief, you cite a couple of unpublished cases from other circuits, both of which seem to involve situations where there was a finding of manifest necessity, and the Court of Appeals reviewing that thought that it wasn't clear how well supported the finding was and remanded. I'm not aware of a case where there was no finding at all, and we remanded, or we or any other Court of Appeals remanded, to allow the district court to make one for the very first time. Is there a case like that? The reason why this does not occur very frequently is because the instances in which an express finding is not made in the district court, often as in Arizona v. Washington, United States v. Chapman, the Court of Appeals will imply or infer a finding of necessity from the record. There's not a case like this one precisely on point in which a severance standard or a somewhat different standard from the manifest necessity standard is found below, and then on appeal it turns out that there was some error with respect to the standard applied below. But there is also no precedent for the notion that under such a situation, which is unique, as I believe the Court noted a few moments ago, that a remand would be inappropriate. Am I misremembering that in Arizona v. Washington itself there was no express finding of manifest necessity, and the Supreme Court said you don't have to have that. Am I misremembering that? Of course, Your Honor, and I see I'm a couple of minutes, three minutes over my allotted time. And that is precisely, Your Honor, why in our brief and today I kept going back to— Doesn't that tell us that that's not dispositive? Oh, absolutely, and that is the crux of our first-line argument, if you will, that this Court can make those findings just like the Supreme Court made those findings in Arizona v. Washington and this Court made it in the United States v. Chapman. The trial court in Arizona v. Washington did not use the words manifest necessity, but the Supreme Court emphasized that the trial court was well aware of the double jeopardy implications of what it was doing. And I think the prosecutor said in a colloquy that's reprinted in the Court's opinion, if we get this wrong, we're going to be done. It's not a retrial. So even though they didn't use the words, there was sort of an understanding of what was going on and the significance of the determination being made that was present there that's absent in this case. Wasn't there? There was a greater understanding of the double jeopardy implication, a more expressed understanding of the double jeopardy implications in those cases. But we're talking about not just moving one step away. We're not just talking about perhaps at this point in our discussion, we're not talking about just not making a finding by the Court of Appeals in the absence of an express finding. Now, we're talking about whether this case would be a candidate for a remand to actually assess under the correct legal standard. As it often happens, the facts are they were frozen in time by the record that was developed before the district court at the time of the proceedings. And there is no precedent that prevents this court from doing that. Has the court ever done that? It seems very strange to go back in time this way and ask the same judge who made this mistake, which he did, as to the applicable standard, to now start over again in a way that at a time when the implications are different, the parties are presumably not there. Not the parties, but the witnesses and the circumstances have changed entirely. It's a completely artificial construct, essentially. I will push back on that, Your Honor. I don't think I agree with that. I don't have at my fingertips a case involving manifest necessity, though we do cite some cases from other jurisdictions. But this would be an instance in which the court is just asked to apply a legal standard to a record that is frozen in place. The unavailability of the witnesses, well, that's a question of time. But, you see, if they were actually applying the manifest necessity standard, the record wouldn't be firmly in place. In other words, there would be inquiries made on the record at the time, which could have been different than what the actual record is at this point. No, no. I'm just going back to Judge Miller's point before. That would be a legal question, and that legal question would be determined based on the factual record that was developed at the time. Right. So if it's a legal determination, then presumably we could make it. If it's not a legal determination, then you would have to have a . . . It would not be an existing record. Had it been done properly, there would not have been necessarily the current record. There would have been an inquiry into what alternatives would be possible at the time, and there was no such inquiry because they weren't applying that standard. You're right. I think there was a fulsome inquiry into the available alternatives. That is why the entire colloquy about the potential continuance happened. This is not a case where the court did not understand . . . It may not have understood or it may have misstated the precise legal standard, but it's not an instance in which the court . . . and the legal implications of that standard with respect to double jeopardy, but it's not an instance in which the court did not consider the various alternatives available to resolve the issue that was presented to the court. Can I ask one other question? Of course. You have not been arguing about consent, i.e. that we should retroactively decide the consent question. Is that because you think we shouldn't or what? No. We made the point in our briefing, and the point remained, and I think that Judge Miller's point before that this would not be a factual determination. It would be a determination based on a record, and the court could determine whether a consent existed based on the words that the case should be . . . The defendant made quite clear after this kind of quip about we should have the whole trial go over again that they didn't want. In fact, we're not consenting to a mistrial. Well, he said that he would not consent to the . . . Or not to a mistrial, to a disseverance. Right, which meant that he would not consent to the one particular type of mistrial that he didn't want. But this is just like the Newton case in the First Circuit, right? The only interest that double jeopardy protected at that time was either the right to continue without a continuance and have the case decided by the first in panel jury or as an alternative to have that jury dismissed and have the case decided by a later jury. And as to those two alternatives, Mr. Crow's position after his attorney consulted with him was clear. He preferred a mistrial as to the entire case as opposed to a continuance. Now, it is true that that's not really what he entirely wanted. He would have preferred a mistrial just . . . a mistrial for the entire case as opposed to a mistrial just for himself. But the double jeopardy clause doesn't protect that particularized choice between a double . . . between who . . . that choice as to whom a particular defendant wants to be tried with. He never had control over that. Can I . . . Because he's actually hitting on something that I . . . we're way over time. But if I think that his order of preference was, I want a continuance, that obviously is what he wanted the most. But if I don't get a continuance, I want a severance. But I want a . . . I mean, I want a mistrial, but I want a very . . . I want a specific kind of mistrial. I want a mistrial where everybody . . . basically, I want a restart of the whole case. In other words, he doesn't care so much that he gets a trial in front of this jury. He just wants to make sure he's with his . . . like they're all in this together. That seems to me pretty obvious. That was his order of preference. And then the last thing was the thing he really did not want to have was to be severed. But . . . so you could certainly say that he consented to a mistrial. I never see where he withdrew that order of preference. It seems to me that order of preference . . . But he's not really . . . he's not consenting to the kind of mistrial that happened here, which is a mistrial that . . . if we were to conclude that it met Menefis necessity, et cetera, a mistrial that just splits him off. So what is that? I guess your best case for that is the Newton case that somehow when you consent to a certain kind of mistrial, you're necessarily consenting to any kind of mistrial. Is that . . . Well, I . . . You're consenting to it for purposes of the double jeopardy clause. Yes, and that's . . . and that makes sense because the underlying right that is protected by the double jeopardy clause in this case, in a mistrial case . . . Is the same jury. So in your best case for that is Newton. Is there any other authority that you . . . I think, you know, these situations tend to arise. They're very case specific, but we think that Newton is the best exemplification of that instance in which a defendant may be put to difficult . . . What other . . . yeah, and I don't want to take us too long. But what other . . . is there any other cases that you have? Because it kind of seems to me that the crux of this case in some sense, the consent issue in this case, is Newton, and that's pretty much what you have as far as . . . That is our best authority. Okay. Thank you very much. Thank you. I'm going to ask the Court to affirm. On consent, I think the best case is the Weston v. Kerning case, which we cited in our reply brief in response to the government's first . . . the first time we ever mentioned consent was on appeal. I think that's the best case. And I know the government has characterized a mistrial for the entire case, that brief mentioned as he wanted a mistrial for him and the other defendants. But, you know, it's our position that that's not what he was asking for. He was asking mistrial for the entire case. He really meant dismissal of the entire case. As to Mr. Crow, he never mentioned anything about the other defendants. But this is all the problem. It's fine. I think it's pretty obvious to me at least that his key consideration was he didn't want to be peeled off. And so if he didn't want to be peeled off, but he was . . . if I was to come to the conclusion that it's clear enough that he is fine with a mistrial as long as everybody gets tried together again in front of a different jury, does that consent for that? I'm not asking you to concede that that's what he . . . but if I thought that he had consented to that and he never withdrew that consent, is that consent sufficient for the judge to then say, well, you've consented to a mistrial so you don't get to pick the kind of mistrial. You don't get to . . . you've consented to a different jury. You don't get to pick who you go along with. I don't think so.  Let's say the judge gives him the mistrial and he gets a new jury, but then in the new trial, is the judge's hands tied not to then sever somebody? He consents to it, so the judge clears the mistrial for everybody, and while they're preparing for the new trial, it becomes clear that he should be severed. Is the judge like, well, he didn't really consent to that, so double jeopardy prevents me from now severing him? You see the problem with saying that he's only consented to a mistrial if it includes everybody, and now that the government's hands are tied, they have to try everybody together or it creates a double jeopardy problem for everybody. Well, I think these are interesting hypotheticals. I don't know that I have the answer to that and whether there's ever been a situation where there was a subsequent trial. My guess is that the judge's hands wouldn't be tied in that second trial, but I don't know. But I don't think the court really has to go there because the district court is very explicit in this very confused exchange. At the end of that exchange where she interrupts Mr. Lujan and says, look, this isn't about consent. I don't care about consent. I don't need his consent. Consent is out of the picture. I mean, the court makes that very clear. So, I mean, to now say for the first time on appeal that there was somehow an adequate consent, you know, again, and this goes back to the Arizona versus Washington point that I wanted to get at, which is, and I think I know you had that question, Judge Van Dyken. I think, Judge Miller, I agree with the points that you made, but I also, I mean, Arizona versus Washington was a situation where the government or the prosecution was saying, you know, we need to have manifest necessity, and the trial court grants the mistrial, and so you can have an implicit finding of manifest necessity. But here we have the government explicitly saying you don't need to find manifest necessity. We have the district court saying. Yeah, so let me, and I know you're on time. So your position, I take it, would be you don't have to use the words manifest necessity. You can be an implicit finding of manifest necessity because you have, I mean, that's what Arizona versus Washington said. But the mind frame of the government and everybody has to be, even though they're not using the words manifest necessity, that they're actually trying to show manifest necessity. If that's your position, what if they just used, you know, what if they used the words, what if they were trying to find, you know, what if they're explicitly trying to find something else, which is basically this case. They're explicitly trying to find prejudice. But it turns out that what they're finding is all the factors that would meet manifest necessity. Why, what is it about that situation that would mean that you can't have a conclusion of manifest necessity when Arizona says you don't have to be explicit? Is it, it seems to me it has to, your whole position turns on the fact that the government doesn't have, or the judge doesn't have the right mind frame. But, like, why does that matter if what they did was actually do something that finds, I'm not saying they did that here, but let's assume for the sake of argument that they did. They found something that would count as manifest necessity under our test. But they just didn't put that label on it, and they also never said they were trying to find that. Why was that disallowed? Well, I just, I don't know. I mean, it's just a grand assumption that the court actually did find manifest necessity and would have terminated the trial. I mean, I don't, it's hard to say on a record. We don't have a record here where there was manifest necessity, which is the problem. But, I mean, I'm trying to think of some scenario where, I don't know, like, the defendant died or something, I guess. Or I don't know where they, like, it would definitely be manifest necessity. I don't know that you can recreate, although what they did, that does constitute manifest necessity. I mean, we just don't know that. So your position is that you just can't, you just, unless they, they could be using the wrong label. They could have said manifest destiny instead of manifest necessity because they just miswrote it. They could be using the wrong label, but they have to be trying to find manifest necessity. The court has to be trying to find that thing or it's waived. You can't ever go back, and the court can't. We can't go back and say, well, this just meets it. Is that, I'm just asking about your position. Yeah, I think we take the position that's what Bonus says. But, and again, and this is where I come back to the Arizona v. Washington and the remand request. I mean, again, we come back to waiver. Can you, I just can't imagine a criminal defendant coming up here and saying, yeah, we told the judge to do the A. So the judge followed us and did A. And now we're up here on appeal, and you know what? We're changing our mind. What the judge should have done is B. In court, would you please remand the case so that the judge can do B? I think 100% of the time this court would say the defendant has waived that argument. I mean, you don't get a remand to do something that you told the judge not to do. Thank you, Mr. Coleman. Thank both sides for their argument in this case, and the case is submitted.
judges: BERZON, MILLER, VANDYKE